## UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF KENTUCKY
## LOUISVILLE DIVISION
## CIVIL ACTION NO.  3:24-CV-00544-GNS-CHL

TRACIE G.,[1]                                                         Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY,                      Defendant.

## REPORT AND RECOMMENDATION

Before the Court is the Complaint filed by Plaintiff, Tracie G. ("Claimant").  Claimant seeks judicial review of the final decision of the Commissioner of Social Security ("the Commissioner").  (DN 1.)  This case was referred to the undersigned Magistrate Judge to prepare a report and recommendation.  (DN 11.)  Claimant and the Commissioner each filed a Fact and Law Summary, and Claimant filed a reply.  (DNs 14, 15, 17, 18.)  Therefore, this matter is ripe for review.

For the reasons set forth below, the undersigned recommends that the final decision of the Commissioner be **AFFIRMED**.

## I.    BACKGROUND

On or about September 29, 2020, Claimant filed an application for supplemental security income ("SSI") under Title XVI of the Social Security Act.  (R. at 10, 104, 121, 123-24, 231-64 626.)  The application alleged disability beginning on August 15, 2019, due to diabetes, osteoarthritis, sleep apnea, thyroid problems, high blood pressure, neuropathy and nerve damage in her hands and feet, chronic obstructive pulmonary disease ("COPD"), gastroesophageal reflux disease and Barrett's esophagus, psoriatic arthritis, dizziness, and vertigo.  (*Id*. at 10, 104, 124,

---

[1] Pursuant to General Order 23-02, the Plaintiff in this case is identified and referenced solely by first name and last initial.

575, 626.)  Claimant's applications were denied initially and again on reconsideration.  (*Id.* at 136-44, 148-53.)

At Claimant's request, Administrative Law Judge Jeffrey Eastham ("ALJ Eastham") conducted a hearing on Claimant's application on December 14, 2021.  (*Id.* at 29-44, 154-56, 663-78.)  ALJ Eastham issued an unfavorable decision on February 1, 2022.  (*Id.* at 7-23, 623-39.)  On February 3, 2023, the Appeals Council denied Claimant's request for review of ALJ Eastham's decision.  (*Id.* at 1-6, 228-30, 370-75, 644-49.)  Claimant timely-filed an appeal to the U.S. District Court for the Western District of Kentucky on March 27, 2023.  DN 1, *Tracie G. v. Comm'r of Soc. Sec.*, No. 3:23-cv-148-CHB-CHL (W.D. Ky. filed Mar. 27, 2023).  The court remanded the case to the Commissioner of Social Security for further proceedings on July 21, 2023, based on the Parties' joint motion for remand.  DN 16, *Tracie G. v. Comm'r of Soc. Sec.*, No. 3:23-cv-148-CHB-CHL (W.D. Ky. filed July 20, 2023); DN 17, *Tracie G. v. Comm'r of Soc. Sec.*, No. 3:23-cv-148-CHB-CHL (W.D. Ky. ent'd July 21, 2023).  On November 27, 2023, the Appeals Council vacated the final decision of the Commissioner and remanded the Claimant's case to an ALJ for further evaluation of the Claimant's ability to perform past relevant work.  (R. at 656-62.)

Administrative Law Judge William C. Zuber ("ALJ Zuber") conducted an additional hearing on Claimant's application on May 9, 2024.  (*Id*. at 595-622.)  Claimant and her counsel appeared by telephone.  (*Id*. at 597.)  An impartial vocational expert also participated in the hearing.  (*Id*. at 597-98.)  During the hearing, Claimant testified to the following.  She is in her mid-sixties and has not worked since August 2019.  (*Id*. at 599.)  Since ALJ Eastham's decision, Claimant was diagnosed with psoriatic arthritis, which she was told was the cause of her foot pain and her toes turning sideways.  (*Id*. at 601-02.)  She also has vertigo five to six times per year, and while it varies in its severity, she manages it with medication.  (*Id*. at 603.)  She also suffers from

and is being treated for obstructive sleep apnea, diabetes, hypertension, COPD, asthma, and neuropathy. (*Id.* at 603-04.) Her COPD still causes her issues but she manages it with medications and breathing treatments. (*Id.* at 604.) She cited frequent cramping and distortion in her fingers and hand that limit her ability to do repetitive activities like typing or peeling potatoes. (*Id*. at 608, 610.) She estimated the pain lasts about 45 minutes to an hour when performing a repetitive activity with her hand. (*Id*. at 611.) She testified that she uses a cane whenever she walks outside the home but relies on the walls for support when moving about inside. (*Id*. at 611-12.) Claimant stated that when she goes to the grocery store, she leans on a cart due to pain in her knees. (*Id*. at 612.) She believed she could walk approximately one city block before her knees act up and she needs to take a ten-minute break. (*Id*.) Claimant reported that she cannot stand for extended periods, estimating she can stand for about ten to twenty minutes at a time. (*Id.*) She also stated that she cannot sit for long periods, indicating she can sit for about an hour before needing to change positions. (*Id*. at 612-13.) She has difficulty lifting and carrying objects and reported that she cannot hold items in her hands for prolonged periods because of pain but has no difficulty handling lightweight objects. (*Id*. at 613.) She further stated that she could cook provided she does not have to stand at the stove continuously. (*Id*.) She reported that she can clean countertops, bathroom sinks, and tables but is unable to perform tasks requiring bending or stooping. (*Id*.) Claimant testified that she is able to attend to her personal needs, such as bathing and dressing but indicated that it takes her longer to complete these tasks because she moves slowly. (*Id*. at 614.) She reported that she used to enjoy sewing but is no longer able to do it. (*Id*.) Claimant stated she does not have difficulties in social interactions and noted that most people she visits are accommodating. (*Id*.) She reported that she occasionally goes out to eat but otherwise does not feel like going many places. (*Id*.) Claimant testified that she takes medication for diabetes, which

causes significant stomach issues including severe diarrhea. (*Id.*) She also reported experiencing

episodes of low blood sugar at night. (*Id.* at 614-15.)

ALJ Zuber issued a new unfavorable decision on May 31, 2024. (*Id.* at 572-94.) Applying

the five-step sequential evaluation process promulgated by the Commissioner to determine

whether an individual is disabled, ALJ Zuber made the following findings. First, Claimant had

not engaged in substantial gainful activity since September 25, 2020, the date the application was

filed. (*Id.* at. 578.) Second, Claimant had the following severe impairments: lumbar degenerative

disc disease, diabetes with peripheral neuropathy, right shoulder impingement, COPD, obesity,

and psoriatic arthritis with left foot pain and history of dizzy spells. (*Id.*) Third, Claimant did not

have an impairment or combination of impairments that met or medically equaled the severity of

a listed impairment from 20 C.F.R. Pt. 404, Subpt. P, App. 1. (*Id.* at 580.) Fourth, Claimant has

the residual functional capacity ("RFC") to perform sedentary work with the following exceptions:

> no more than occasional[ ] overhead reaching, pushing, and pulling with the
> dominant right upper extremity; requires a cane for ambulation; no more than
> occasional stooping, crouching, and climbing of ramps and stairs; no crawling,
> kneeling, or climbing of ladders, ropes, or scaffolds; should avoid concentrated
> exposure to extremes of temperature, humidity, poor ventilation, dust, fumes, gases,
> or odors; no more than frequent handling and fingering with the upper extremities;
> and no more than occasional exposure to dangerous machinery and unprotected
> heights.

(*Id.* at 580.) Fifth, and finally, Claimant was capable of performing her past relevant work as a

claims examiner because that work did not require performance of work-related activities

precluded by Claimant's RFC. (*Id.* at 586.) ALJ Zuber concluded Claimant was not under a

disability, as defined in the Social Security Act, since September 25, 2020. (*Id.* at 587.)

No exceptions were filed to ALJ Zuber's unfavorable decision, and the Appeals Council

did not assume jurisdiction on its own authority. Accordingly, ALJ Zuber's decision became the

final decision of the Commissioner.  *See* 20 C.F.R. § 416.1484(a), (d) (2025).  Claimant timely

filed this action on September 25, 2024.  (DN 1.).

## II.    CONCLUSIONS OF LAW

The Social Security Act authorizes payments of SSI to persons with disabilities.  *See* 42

U.S.C. §§ 1381-1383f.  An individual shall be considered "disabled" if he or she is unable "to

engage in any substantial gainful activity by reason of any medically determinable physical or

mental impairment which can be expected to result in death or which has lasted or can be expected

to last for a continuous period of not less than twelve months."  42 U.S.C. § 1382c(a)(3)(A); *see*

*also* 20 C.F.R. § 416.905(a) (2025).

### A.    Standard of Review

The Court may review the final decision of the Commissioner, but that review is limited to

whether the Commissioner's findings are supported by "substantial evidence" and whether the

Commissioner applied the correct legal standards.  42 U.S.C. § 405(g); *Key v. Callahan*, 109 F.3d

270, 273 (6th Cir. 1997).  "Substantial evidence" means "more than a mere scintilla"; it means

"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."

*Richardson v. Perales*, 402 U.S. 389, 401 (1971).  The Court must "affirm the Commissioner's

decision if it is based on substantial evidence, even if substantial evidence would also have

supported the opposite conclusion." *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 374 (6th Cir.

2013); *see Smith v. Sec'y of Health & Hum. Servs.*, 893 F.2d 106, 108 (6th Cir. 1989) (holding that

if the Court determines the ALJ's decision is supported by substantial evidence, the court "may

not even inquire whether the record could support a decision the other way").  However, "failure

to follow agency rules and regulations" constitutes lack of substantial evidence, even where the

Commissioner's findings can otherwise be justified by evidence in the record. *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011).

### B.    Five-Step Sequential Evaluation Process for Evaluating Disability

The Commissioner has promulgated regulations that set forth a five-step sequential evaluation process that an ALJ must follow in evaluating whether an individual is disabled.  20 C.F.R. § 416.920 (2025).  In summary, the evaluation process proceeds as follows:

(1)    Is the claimant involved in substantial gainful activity?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," proceed to the next step.

(2)    Does the claimant have a medically determinable impairment or combination of impairments that satisfies the duration requirement[2] and significantly limits his or her physical or mental ability to do basic work activities?  If the answer is "no," the claimant is not disabled.  If the answer is "yes," proceed to the next step.

(3)    Does the claimant have an impairment that meets or medically equals the criteria of a listed impairment within 20 C.F.R. Part 404, Subpart P, Appendix 1?  If the answer is "yes," the claimant is disabled.  If the answer is "no," proceed to the next step.

(4)    Does the claimant have the RFC to return to his or her past relevant work?  If the answer is "yes," then the claimant is not disabled.  If the answer is "no," proceed to the next step.

(5)    Does the claimant's RFC, age, education, and work experience allow him or her to make an adjustment to other work?  If the answer is "yes," the claimant is not disabled.  If the answer is "no," the claimant is disabled.

20 C.F.R. § 416.920(a)(4).

The claimant bears the burden of proof with respect to steps one through four. *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).  However, the burden shifts to the Commissioner at step five to prove that other work is available that the claimant is capable of

---

[2] To be considered, an impairment must be expected to result in death or have lasted/be expected to last for a continuous period of at least twelve months.  20 C.F.R. § 416.909 (2025).

performing. *Jordan v. Comm'r of Soc. Sec.*, 548 F.3d 417, 423 (6th Cir. 2008). The claimant always retains the burden of proving lack of RFC. *Id.*; *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 392 (6th Cir. 1999).

### C.    Claimant's Contentions

Claimant challenged ALJ Zuber's findings regarding her RFC. First, she argued that ALJ Zuber erred by not incorporating in his RFC finding the degree of limitation he had found in his assessment of the paragraph B criteria at step two of the five-step evaluation process. (DN 14, at PageID # 1132-41.) Second, she argued that ALJ Zuber's RFC finding did not comply with SSR 96-8p. (*Id*. at 1142.) Claimant also argued that should the Court find any errors, this matter should be remanded for an award of benefits as opposed to for further proceedings. (*Id.* at 1143.) The undersigned will address each of Claimant's arguments below.

### 1.    Claimant's Mental RFC

Claimant argued that ALJ Zuber should have incorporated in his RFC finding his step-two finding that Claimant had no more than mild difficulties in each of the four paragraph B criteria. (*Id.* at 1132-41.) Claimant explained, "PRT findings, even mild ones, must find adequate expression via specific functional limitations in the RFC determination or the ALJ must adequately explain their basis for not doing so." (*Id.* at 1133; DN 18, at PageID # 1166 ("[T]he ALJ must somehow account in the RFC for the mental functional limitations he has identified in the PRT analysis **OR** explain their omission from the RFC finding." (emphasis in original)).)

An ALJ's RFC finding is the ALJ's ultimate determination of what a claimant can still do despite his or her physical and mental limitations. 20 C.F.R. § 416.945(a)(1) (2025). The ALJ bases his or her determination on all relevant evidence in the case record. 20 C.F.R. § 416.945(a)(1)-(4). Thus, in making his or her determination of a claimant's RFC, an ALJ must

necessarily evaluate the persuasiveness of the medical opinions in the record and assess the claimant's subjective allegations.  20 C.F.R. §§ 416.920c, 416.929 (2025).  The ALJ is required to consider both severe and nonsevere impairments in assessing a claimant's RFC.  20 C.F.R. § 416.945(a)(2).  Further, an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g. laboratory findings) and nonmedical evidence (e.g. daily activities, observations."  SSR 96-8p, 61 Fed. Reg. 34474, 34478 (July 2, 1996).

By contrast, at steps two and three of the sequential evaluation process, when evaluating a claimant's mental impairments, the regulations require an ALJ to follow a special technique known as the psychiatric review technique ("PRT").  20 C.F.R. 416.920a (2025).  Specifically, after evaluating whether an individual has a medically determinable mental impairment, the regulations require an ALJ to rate the degree of functional limitation resulting from a claimant's mental impairment(s) by reference to four functional areas: an individual's ability to understand, remember, and apply information; interact with others; concentrate, persist, and maintain pace; and adapt or manage oneself.  *Id.* at § 416.920a(b)-(c).  These four areas are commonly referred to as the "paragraph B" criteria as they parallel the criteria of paragraph B of the adult mental disorders listings.  20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.00(A)(2)(b) (effective Oct. 6, 2023, to Feb. 17, 2025).  But, the PRT is distinct and different from the RFC determination:

> The psychiatric review technique described in 20 CFR 404.1520a and 416.920a and summarized on the Psychiatric Review Technique Form (PRTF) requires adjudicators to assess an individual's limitations and restrictions from a mental impairment(s) in categories identified in the "paragraph B" and "paragraph C" criteria of the adult mental disorders listings. The adjudicator must remember that the limitations identified in the "paragraph B" and "paragraph C" criteria are not an RFC assessment but are used to rate the severity of mental impairment(s) at steps 2 and 3 of the sequential evaluation process. The mental RFC assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment by itemizing various functions contained in the broad categories found

8

in paragraphs B and C of the adult mental disorders listings in 12.00 of the Listing
of Impairments, and summarized on the PRTF.

SSR 96-8p, 61 Fed. Reg. at 34477.

Here, at step two, ALJ Zuber found that Claimant's depression and anxiety were nonsevere

impairments that "d[id] not cause more than minimal limitation in the claimant's ability to perform

basic mental work activities." (R. at 578.)  He then found that Claimant had "no more than mild

difficulties" in each of the four paragraph B criteria. (*Id.* at 579.)  Throughout his analysis, ALJ

Zuber noted Claimant's testimony regarding her abilities, including her statements regarding

problems with memory and concentration, but emphasized that the record did not substantiate her

complaints.  (*Id.*)  As to her memory, he emphasized that her "treatment records corroborate[d]

few or no related complaints, inconsistent statements, [and] normal related exam findings." (*Id.*)

As to her ability to interact with others, he emphasized that Claimant went grocery shopping, went

out to eat, went on vacation, spent time with others regularly, and denied issues getting along with

others; he also stressed that Claimant's "[p]rimary care records note[d] normal related findings as

well, including with regard to mood and behavior." (*Id.*)  As to her ability to concentrate, persist,

and maintain pace, he emphasized that Claimant's allegations regarding any deficiencies were "not

entirely consistent with the record," stressing that "[o]nce again, treatment records corroborate few

or no related complaints and normal related exam findings, including with regard to alertness,

orientation, and behavior." (*Id.*)  As to Claimant's ability to adapt and manage herself, ALJ Zuber

emphasized that treatment records showed "normal findings with regard to judgment" and that

"claimant ha[d] acknowledged daily activities within her physical capacity, including preparing

meals, light housework, driving, and shopping." (*Id.*)  ALJ Zuber concluded his analysis by noting

that Claimant's medically determinable mental impairments were nonsevere, stating that "the

evidence d[id] not otherwise indicate that there is more than a minimal limitation in the

[C]laimant's ability to do basic work activities." (*Id.*)  He then noted,

> The limitations identified in the "paragraph B" criteria are not a residual functional capacity assessment but are used to rate the severity of mental impairments at steps 2 and 3 of the sequential evaluation process. The mental residual functional capacity assessment used at steps 4 and 5 of the sequential evaluation process requires a more detailed assessment. The following residual functional capacity assessment reflects the degree of limitation the undersigned has found in the "paragraph B" mental function analysis.

(*Id.*)  Then, at step four, "[a]fter careful consideration of the entire record," ALJ Zuber found that

Claimant had the RFC to perform a limited range of sedentary work.  (*Id.* at 580.)  His decision

included language that his RFC finding was based on his consideration of "all symptoms and the

extent to which these symptoms can reasonably be accepted as consistent with the objective

medical evidence and other evidence," as well as any medical opinions and prior administrative

medical findings.  (*Id.*)  However, he did not assess any limitations related to Claimant's mental

impairments.  (*Id.*)  His analysis focused on Claimant's allegations and treatment regarding her

physical impairments.  (*Id.* at 580-85.)  The only brief reference to Claimant's mental impairments

in ALJ's Zuber's RFC analysis was his notation that the state agency reviewing psychologists

"assessed no more than mild difficulties and non-severe impairment," adopting limitations

endorsed in a prior decision.  (*Id.* at 583.)  The ALJ found "these state agency findings consistent

with the record as a whole and persuasive."  (*Id.*)

Claimant argued that ALJ Zuber's RFC discussion was insufficient because it did not

include any limitations corresponding to his finding regarding the paragraph B criteria and did not

explain why those limitations were excluded.  (DN 14, at PageID # 1132-41.)  She cited numerous

cases in support of her position.  But Claimant has not identified—nor is the undersigned aware

of—any authority *requiring* paragraph B limitations to be adopted into an ALJ's RFC

determination.  Instead, the cases cited by Claimant support that failure to adopt related limitations *can be* erroneous.  After all, it is not automatic that a non-severe "impairment—either singly or in combination with a claimant's other impairments—does not impose *any* work-related restrictions."  *Katona v. Comm'r of Soc. Sec.*, No. 14-CV-10417, 2015 WL 871617, at *6 (E.D. Mich. Feb. 27, 2015).  But it is equally true that "not every mild or moderate limitation signifies a compromised work ability."  *Richardson v. Saul*, 511 F. Supp. 3d 791, 799 (E.D. Ky. 2021).  Thus, the facts of a particular case matter in determining whether an ALJ's discussion was sufficient.

On the facts of the instant case, the undersigned does not find any error in ALJ Zuber's discussion.  ALJ Zuber's repeated references at step two to the fact that Claimant's allegations of limitations were not consistent with the normal findings in the treatment records combined with his finding at step four that the state agency reviewing psychologists' opinions were persuasive are sufficient to support the absence of limitations in his RFC or further discussion of Claimant's mental functioning in his RFC analysis.  The state agency psychologist on initial review stated, "All MER has been received and note treatment for her physical issues. She has not been diagnosed, treated, prescribed medication, or referred for mental health treatment in recent years." (R. at 115.)  Then, on reconsideration, the second reviewing psychologist stated, "Disability is alleged due to physical conditions only. Per ADL, the claimant reported difficulty with memory and concentration but referred only to physical conditions and pain in the comment line re: the above. Current MER is for physical conditions only." (*Id.* at 126.)  These are the opinions ALJ Zuber found persuasive, evidencing his agreement with these statements and opinions.  When added with ALJ Zuber's statements that his RFC was based on "careful consideration of the entire record" and that in making his RFC finding, ALJ Zuber had "considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with the objective

11

medical evidence and other evidence," the record and his decision supports that ALJ Zuber did not believe the evidence supported a need for mental limitations in the RFC.  Though these latter statements are form language included in most AJL decisions—or as Claimant refers to them: "macros"—they are not without meaning in a case such as this one and courts still do rely on them. *See, e.g.*, *Smith v. Comm'r of Soc. Sec.*, 715 F. Supp. 3d 994, 999 (E.D. Mich. 2024).  These statement are particularly significant here because this is not a case where the ALJ's discussion did not address a significant body of contrary evidence.  While Claimant expended significant effort in her brief to cite voluminously to persuasive case law, absent from her brief is any discussion of or citation to medical evidence supporting that her mental impairments affected her ability to perform work activities.  Claimant cited to no treatment she obtained for her mental impairments and no instance where a medical provider imposed any limitations related to her mental impairments.  Claimant likewise cited to no medical evidence in the record to contradict ALJ Zuber's conclusion that her mental status exam findings were largely normal.  While Claimant emphasized in a footnote in her brief that her arguments related to whether ALJ Zuber committed "legal error" in his RFC discussion (DN 14, at PageID # 1134 n.1), here, there was only a legal error if there was something ALJ Zuber should have discussed that he did not.  Claimant's brief fails to provide any factual showing to substantiate that there was anything more for ALJ Zuber to discuss than he already had elsewhere in his decision.  In the absence of that evidence, the undersigned finds that ALJ Zuber's cursory discussion was appropriate and consistent with his obligations under the applicable regulations.

### 2.    SSR 96-8p

Claimant argued that ALJ Zuber's RFC finding was deficient because he "failed to indicate with specificity the [C]laimant's functional abilities with respect to each individual physical

activity." (DN 14, at PageID # 1142,)  Claimant argued that SSR 96-8p required that ALJ to do more than simply state that she was capable of "sedentary" work and that instead ALJ Zuber should have done a "function-by-function" assessment of her ability to sit, stand, walk, etc.  (*Id.*)

As noted above, SSR 96-8p states that an ALJ's assessment of a claimant's RFC "must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR 96-8p, 61 Fed. Reg. at 34478.  It requires an ALJ's RFC finding to address in a function-by-function evaluation both the exertional and nonexertional capabilities of an individual.  *Id.* at 34476-77.  Exertional limitations relate to an individual's ability to sit, stand, walk, lift, carry, push, and pull.  *Id.* at 34477.  Nonexertional limitations relate to an individual's potential postural, manipulative, visual, communicative, and mental limitations and ability to tolerate various environmental factors.  *Id.*  However, "case law does not require the ALJ to discuss those capacities for which no limitation is alleged." *Delgado v. Comm'r of Soc. Sec.*, 30 F. App'x 542, 547 (6th Cir. 2002) (per curiam); *Rudd v. Comm'r of Soc. Sec.*, 531 F. App'x 719, 729 (6th Cir. 2013).

Here, ALJ Zuber's RFC analysis comported with the requirements of SSR 96-8p.  He stated that Claimant was capable of performing sedentary work with certain exceptions when it came to reaching, pushing, pulling, stooping, crouching, climbing, crawling, kneeling, handling, fingering, and certain other environmental limitations.  (R. at 580.)  His use of the term sedentary automatically incorporated the functional limitations associated with that term as defined by both regulation and agency policy.  20 C.F.R. § 416.967(a) defines sedentary work as follows:

> Sedentary work involves lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools. Although a sedentary job is defined as one which involves sitting, a certain amount of walking

13

and standing is often necessary in carrying out job duties. Jobs are sedentary if walking and standing are required occasionally and other sedentary criteria are met.

20 C.F.R. § 416.967(a) (2025).  SSR 96-9p further clarifies this definition:

"Occasionally" means occurring from very little up to one-third of the time, and would generally total no more than about 2 hours of an 8-hour workday. Sitting would generally total about 6 hours of an 8-hour workday. Unskilled sedentary work also involves other activities, classified as "nonexertional," such as capacities for seeing, manipulation, and understanding, remembering, and carrying out simple instructions.

SSR 96-9p, 61 Fed. Reg. 34478, 34480 (July 2, 1996).  Thus, by saying that Claimant was capable of sedentary work without any other stated limitations, ALJ Zuber's RFC encompasses that Claimant was capable of lifting no more than ten pounds at a time, sitting six of eight hours in an eighth-hour workday, and walking and standing two hours out of an eight-hour workday.  Claimant cited no case law to support that this was insufficient for purposes of SSR 96-8p, and the undersigned is aware of none.  Though Claimant argued that her ability to sit, stand, and walk were significant to the outcome of her case, she did not provide any medical evidence challenging ALJ Zuber's conclusion that she was capable of the full amount of sitting, standing, and walking definitionally associated with sedentary work.  Under these circumstances, the undersigned finds Claimant's argument regarding any lack of compliance with SSR 96-8p to be without merit.

### 3.    Remand for Benefits

Because the undersigned has rejected all of Claimant's proffered assertions of error and found no basis to justify remand, the undersigned does not reach Claimant's argument that any remand should be for an award of benefits instead of for further proceedings.

14

## III.    RECOMMENDATION

For the foregoing reasons, the undersigned **RECOMMENDS** that the final decision of the Commissioner be **AFFIRMED**.

Colin H Lindsay, Magistrate Judge

United States District Court

cc:  Counsel of record

December 17, 2025

## <u>Notice</u>

Pursuant to 28 U.S.C. § 636(b)(1)(B)-(C), the undersigned Magistrate Judge hereby files with the Court the instant findings and recommendations.  A copy shall forthwith be electronically transmitted or mailed to all parties.  28 U.S.C. § 636(b)(1)(C).  Within fourteen (14) days after being served, a party may serve and file specific written objections to these findings and recommendations.  Fed. R. Civ. P. 72(b)(2).  Failure to file and serve objections to these findings and recommendations constitutes a waiver of a party's right to appeal.  *Id.; United States v. Walters,* 638 F.2d 947, 949-50 (6th Cir. 1981); *see also Thomas v. Arn,* 474 U.S. 140 (1985).